# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff | : | Civil No. 3:17-CV-0348 |
| v. | : | (JUDGE MANNION) |
| **VANTAGE TRUST FEDERAL CREDIT UNION, f/k/a WILKES-BARRE VA EMPLOYEES CREDIT UNION,** | : | |
| | : | |
| Defendant | | |

## MEMORANDUM

The United States filed an action to eject the defendant Vantage Trust Federal Credit Union, f/k/a Wilkes-Barre VA Employees Credit Union ("Vantage"), from federal land which it has been occupying for free for the past 22 years under a revocable license it was granted alleging that the license was revocable at the instance of the United States, i.e., licensor, and that the license expired. (Doc. 1). The United States also seeks to have Vantage restore the federal land to substantially the same condition as it was at the beginning of its occupancy. Additionally, the United States seeks damages from Vantage for the alleged unlawful holding over.

In response to the government's complaint, Vantage filed an answer with affirmative defenses and attached a copy of the Revocable License it was granted by the government as an exhibit. (Doc. 7, Doc. 7-1). Vantage also asserted three counterclaims against the government essentially claiming that it is entitled to its continued free occupancy of the federal land and, it seeks

damages from the government alleging that it is being deprived of the benefits conferred upon it by the license it was granted. Vantage claims that after the license expired, it was entitled to continued occupancy of the property since the government expressly gave it permission to do so.

Presently before the court is the government's motion to dismiss the counterclaims of Vantage pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 12). The government seeks to dismiss Vantage's counterclaims for breach of contract and promissory estoppel as well as its claim for declaratory judgment.

In viewing the factual allegations of Vantage's counterclaims in the light most favorable to Vantage, the court will **GRANT** the government's motion and dismiss the counterclaims since they fail to state cognizable claims.

## I. BACKGROUND[1]

On September 18, 1995, the government entered into a Revocable License (the "license") with Vantage's predecessor, namely, Wilkes-Barre VA Employee Credit Union (licensee). The purpose of the license was: "Construction of a 6,909-square-foot free-standing one-story building to house the Wilkes-Barre VA Employees Credit Union." The consideration for the license which the government (licensor) received was: "VA to use a portion of [the] building" to be constructed by licensee. The license had an express

---

[1]The facts alleged in Vantage's counterclaims must be accepted as true in considering the government's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 F.App'x 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

2

term from October 1, 1995 through September 30, 2011. (Doc. 1, Ex. A & Doc. 7-1).

The license specified conditions, including the following two:

I. NOTICE. Any property of the Licensee installed or located on the property affected by this License shall be removed within 30 days of written notice from the Veterans Administration.

o. ASSIGNMENT, REVOCATION, AND ABANDONMENT. This license is unassignable and shall be revocable by either party within the time indicated under special conditions. Upon revocation of this license or abandonment by the licensee, at election of the Government, the licensee shall restore the property to substantially the same conditions as those existing at the time of entry.

Addendum I of the license contained a provision pertaining to termination or expiration of the license which provided:

12. Upon the termination or expiration of the License, or in the event of default by the Licensee of the Revocable License, the Licensee will determine the decision to move, tear down or donate the building to the VA should the credit union not be granted a new Revocable License. In the event Licensor terminates this License prior to it's (sic) expiration for any reason, or closes its medical facility, Licensor agrees to reimburse the Licensee in an amount equal to the fair market value of the building.

Addendum I also provided:

14. No later than 90 days prior to the date of expiration or termination of this License, or upon default by the Licensee, if the government determines that it does not want to occupy, or otherwise use the building construction pursuant to paragraph 1 of this License, and the Licensed property should be restored to its original state, the Licensee shall vacate the building, remove its

3

personal property and all fixtures therefrom, and restore the Licensed property to the same condition as that existing on the commencement date of this Licensed property.

Further, ¶11 of Addendum I provided that: "In consideration of the covenants of this License, Licensee agrees to make available to the Licensor, when unoccupied, the Board Room for its use."

On April 18, 2016, counsel for the VA sent an email to Vantage, (Doc. 1, Ex. B), advising it in pertinent part as follows:

> The counter offer provided by your client is not feasible. It has been over a year now since discussion on this matter began and there has been no progress in reaching a mutually agreeable resolution. As a result, the Department of Veterans Affairs (VA), in accordance with Paragraph I. Notice of the General Conditions of the most recent Revocable License (License), is hereby providing Vantage Trust Federal Credit Union (Licensee) a 30-day written notice to remove all property installed on VA Property affected by said License.

In its complaint, (Doc. 1, ¶13), the government alleges that despite the email "Vantage continues to maintain unauthorized use and occupancy of the [VA property] and has refused to restore the property to substantially the same conditions as those existing at the time of its entry, all of which constitutes a trespass upon property of the United States."

## II. PROCEDURAL HISTORY

The government commenced this action by filing a complaint on February 24, 2017. (Doc. 1). Jurisdiction in this court was based upon federal

4

question and since the Untied States was a party pursuant to 28 U.S.C. §§1331 and 1345.

On April 28, 2017, Vantage filed its answer to the complaint and raised three counterclaims against the government. (Doc. 7, Doc. 7-1)

On June 27, 2017, the government filed a motion to dismiss Vantage's counterclaims and, it filed its brief in support on July 11, 2017. (Doc. 12, Doc. 13). After being granted an extension of time, Vantage filed its brief in opposition to the motion on August 11, 2017. (Doc. 18). The government filed a reply brief on September 1, 2017, after an extension was granted. (Doc. 21).

## III. STANDARD OF REVIEW

The government's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint (or in this case a counterclaim), in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief

5

above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.  DISCUSSION

In its motion, the government seeks to dismiss all three of Vantage's counterclaims against it. The court will discuss the counterclaims *seriatim*.

The first counterclaim that Vantage raises is for breach of contract, Count One. Vantage alleges that after the initial term of the "License Agreement"[2] Vantage Trust continued to occupy the property and use the building "based upon and in accordance with the same terms and conditions set forth in the License Agreement and with the express permission of the Federal Government." It then alleges that the parties agreed that "the terms and conditions of the License Agreement remained in effect for so long as Vantage Trust continued to use the land and the building." On May 15, 2015, Vantage alleges that "Dr. Michael Adelman, Director of the Wilkes-Barre VA Medical Center, on behalf of [the government], agreed that Vantage Trust could continue to occupy and use the land to operate its business at the building for a period of four years (4) commencing on November 1, 2015 and expiring on October 31, 2019 (the "Renewal Term")." In return for the continued use of the property, Vantage avers that the VA did not request any rent payments. Despite the alleged renewal term, Vantage states that on April 18, 2016, the VA notified it that it had to vacate the property and restore it to

---

[2]The court notes that notwithstanding Vantage's repeated reference to a "License Agreement" in its counterclaims as well as its opposition brief, there was no such document. Rather, only a Revocable License existed between the parties.

7

its original condition. (Doc. 1, Ex. B).

Vantage then alleges in its breach of contract counterclaim that, based on the last sentence of ¶12 of the Addendum to the license, which is stated above, the government is essentially "terminating the License Agreement prior to the expiration of the [alleged] Renewal Term" and, thus the government is required to reimburse it for the fair market value of the building. Vantage asserts that it has requested the government pay it an amount equal to the fair market value of the building, but the government has refused to do so which now entitles it to damages in this amount. (Doc. 7 at 6-8).

Since Vantage has not submitted any documentation with respect to the alleged renewal term, it appears that it was an allegedly oral agreement. In fact, the government states that no written document existed. (Doc. 13 at 12). Nor does Vantage allege that either Congress or the VA delegated to Dr. Adelman the power to contract on behalf of the government with it. Rather, Vantage points out that the license, Addendum I, ¶2, provided the use and occupancy of the property was subject to the general supervision and approval of the VA Medical Center Director. The court finds no merit to Vantage's assertion, (Doc. 18 at 7), that "Dr. Adelman had the ability to renew the terms of the [License]" simply because he had general supervisory authority over the property. "Government's agents cannot contract to do that which they do not have a legal right to do." Hage v. U.S., 35 Fed. Cl. 147, 167 (1996) (quoting Clawson v. United States, 24 Cl.Ct. 366, 371 (1991). The

8

court in Hage, id., then stated that "[e]ven if plaintiffs believed the permit to be a contract and relied on the permit as a contract, Forest Service personnel cannot contractually bind the government without the proper legal authority." As stated above, Vantage does not allege that Dr. Adelman had proper legal authority to bind the government into a contract with Vantage allowing Vantage to continue using the property without charge, even if he thought the Revocable License was a contract.

Further, as the government points out, (Doc. 13 at 11),"[i]f Vantage is claiming that the United States was conveying an interest in real property [under the May 2015 oral renewal term], then under the Statute of Frauds that agreement must be in writing." As stated, Vantage does not allege that any written document existed regarding the renewal term. Also, the government is not alleged to have received any adequate consideration for the renewal term. Vantage states that it was obligated in the license to make its board room available to the government for its use and that this obligation continued by virtue of the renewal term which was consideration for the renewal term. However, the court finds that this does not constitute adequate consideration for Vantage's continued free use of the property.

The government contends that the counterclaim for breach of contract should be dismissed since there was no contract or lease between the parties only a revocable license existed which did not bestow any property rights to Vantage.

9

The government cites to Hage v. U.S., 35 Fed. Cl. 147 (1996), a case in which the Court of Federal Claims considered whether the grazing permit to use federal land that the Forest Service granted plaintiffs was a binding contract between the federal government and plaintiffs. In Hage, id. at 166, the Court explained:

> A contract creates legally enforceable rights and duties between the parties whereby the breach of such agreement gives rise to a remedy. Restatement (Second) of Contracts, §1 (1981). In contrast, a license creates a personal or revokable privilege allowing a specific party to utilize the land of another for a specific purpose but does not vest any title or interest in such property in the licensee. Moreover, a party cannot transfer an interest in property with a license. *See* Arthur L. Corbin, 2 Corbin on Contracts §404 (rev. ed. 1993). A contract, on the otherhand, is analogous to a lease (and in various circumstances the legal conceptions merge into one) and creates a vested property interest against the world. *See* Arthur L. Corbin, 3A Corbin on Contracts §686 (1963 ed.).

The court in Hage, id. at 167, concluded that "the permit at issue here is not a contract the breach of which may require damages." *See also* S. Fork Livestock Partnership v. United States, 183 F.Supp. 3d 1111, 1118 (D.Nev. 2016) (court held that the grazing permits the government granted plaintiff did not constitute valid contracts and that they were "licenses conferring certain privileges, revocable at the government's discretion.").

The government also cites to Conti v. U.S., 291 F.3d 1334 (Fed. Cir. 2002), for support in which the court held that a fisherman's swordfishing permit did not give him a property right which the government could not

revoke without compensation. The court held that plaintiff's "swordfishing permit, like the grazing permits in [United States v. Fuller, 409 U.S. 488 (1973)] and [Alves v. United States, 133 F.3d 1454, 1457 (Fed. Cir. 1998), falls short of conferring a cognizable property interest." Id. at 1342. The court stated, "[t]he absence of crucial indicia of a property right, coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [plaintiff's] swordfishing permit, compels the conclusion that the permit bestowed a revocable license, instead of a property right." Id.

Similar to *Conti*, in the present case the revocable license which the government granted to Vantage, at ¶'s (l) and (o), clearly indicates that Vantage acquired no interest in the improvements to the property after the license terminated. Also, the license was unassignable and was "revocable by either party within the time indicated under special conditions."

The elements of breach of contract under Pennsylvania law are: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damages. Core States Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999); Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). It is thus axiomatic that there must be a contract to be able to assert a breach of contract claim. In this case, the court finds no contract ever existed between the parties. The Revocable License was not a contract based on its express terms. If this document was not a contract and only an expired license, then the alleged oral renewal term

11

cannot convey any contractual rights upon Vantage. Vantage's counterclaim for breach of contract is based on its allegation that the government breached its duty imposed by the oral renewal term. Its request for relief is then based on the language of the written Revocable License. The government points out, (Doc. 13 at 6-7), in its brief:

> Vantage cannot bootstrap its interest in an expired revocable license into something more, simply by pointing to the United States acquiescence in Vantage's holding over after its revocable license expired. Having been granted no possessory interest in the first place, Vantage cannot create such an interest merely by staying over.

To survive a motion to dismiss "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008). Since Vantage cannot establish a required element of its breach of contract claim, i.e., the existence of a contract, the court will grant the government's motion to dismiss this claim with prejudice since it would be futile to allow an amendment.

Vantage's second counterclaim, Count Two, is for promissory estoppel. Vantage alleges that it reasonably relied upon the promise of Dr. Adelman and his agreement that it could continue to use the property for its operations for four years, i.e, November 1, 2015 through October 31, 2019. Vantage also alleges that based on its "justifiable reliance upon Dr. Adelman's promise, [it] halted the sale of [its] Pittston Branch building and postponed purchasing

12

other locations because the Federal Government extended the term of the License Agreement until October 31, 2019." Vantage then alleges that due to its detrimental reliance on the promise, it suffered damages exceeding $100,000. (Doc. 7 at 8-9).

"To make a claim for promissory estoppel, [Vantage] must allege: 1) [the government] made a promise [it] should have reasonably expected to induce action or forbearance on the part of [Vantage]; 2) [Vantage] actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." MDNet, Inc. v. Pharmacia Corp., 147 Fed.Appx. 239, 244 (3d Cir. 2005) (citation omitted). "Promissory estoppel is applied to enforce a promise not supported by consideration, where there is no binding contract." Id.; *see also* In re Ginko Assoc., L.P., 372 B.R. 229, 239 (E.D.Pa. 2007) ("either additional consideration or reliance is required to support a contractual modification.") (citations omitted).

The government argues that Vantage's counterclaim for promissory estoppel should be dismissed since it failed to plead the necessary element of justifiable reliance and since "equitable estoppel will not lie against the government as it lies against private litigants." (Doc. 13 at 14) (quoting Office of Personnel Management v. Richmond, 496 U.S. 414, 419, 110 S.Ct. 2465 (1990)); *see also* Johnson v. Guhl, 357 F.3d 403, 409 (3d Cir. 2004) (same).

In Guhl, id., the Third Circuit stated:

13

In *Richmond*, even though a federal employee provided misinformation to the plaintiff (on which he relied to his detriment), the Supreme Court declined equitably to estop the Government. Id. at 433-34, 110 S.Ct. 2465. In a case more than a century before, *The Floyd Acceptances*, the Court similarly held that the Government could not be compelled to honor bills of exchange issued by a government official where there was no statutory authority for the issuance of the bills. 7 Wall. 666, 74 U.S. 666, 682–83, 19 L.Ed. 169 (1868).

The Third Circuit in *Guhl*, id. at 410, also noted that "the *Richmond* Court left open the possibility that some kind of 'affirmative misconduct' might give rise to estoppel against the Government." *See also* Center for Special Needs Trust Admin., Inc. v. Olson, (D.N.D. April 25, 2011) 2011 WL 1562516, *10 ("In addition to proving the traditional elements of estoppel, the plaintiff must first establish that the government committed affirmative misconduct.") (quoting Rutten v. United States, 299 F.3d 993, 995-96 (8th Cir. 2002). Moreover, the *Richmond* Court held that "claims for estoppel cannot be entertained where public money is at stake." Richmond, 496 U.S. at 427. Vantage's allegations in its promissory estoppel counterclaim simply do not rise to the level of affirmative misconduct on the part of the government or its agency, the VA.

As such, the court will grant the government's motion to dismiss Vantage's counterclaim for promissory estoppel since this claim cannot be maintained against the government in this case as a matter of law. *See Guhl*, *supra*; *Olson, supra*.

Vantage's third and final counterclaim is for declaratory judgment. Vantage seeks a declaratory judgment with respect to its rights under the license. Specifically, Vantage requests the court to enter an order declaring the following:

> (a) that the government agreed to extend the license until October 31, 2019;
> (b) that the government has terminated the license prior to the expiration of the renewal term;
> (c) that the government reimburse Vantage an amount equal to the fair market value of the building;
> (d) that, pursuant to the license, Vantage is not required to make payments of rent, mesne profits, or any other damages to the government;
> (e) that, under the license, Vantage is not required to pay for the demolition of the subject building or restoration of the property to its original condition.

(Doc. 7 at 9-10).

The Federal Declaratory Judgment Act states that "in case of actual controversy within its jurisdiction ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a). The United States Supreme Court has held that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." Wilson v. Seven Falls Co., 515 U.S. 277, 282 (1995).

This court has held that jurisdiction in declaratory judgment is limited to "when the court is faced with issues of federal statutory interpretation, the government's choice of federal forum, an issue of sovereign immunity, or inadequacy of a state proceeding." Schoenberg v. State Farm Insurance Company, No. 3:12-cv-01858 (M.D. Pa. Sept. 21, 2012).

In Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust, 674 F.Supp.2d 562, 566 (D.Del. 2009), the court stated:

> A counterclaim for declaratory relief may be dismissed as redundant where "there is complete identity of factual and legal issues between the complaint and the counterclaim." Dismissal is justified in such cases on the theory that the counterclaim will become moot upon disposition of the complaint. Considering the difficulty in determining whether a declaratory judgment counterclaim is in fact redundant prior to trial, however, authorities suggest that a court should dismiss such counterclaims only when there is no doubt that they will be rendered moot by adjudication of the main action.

(citations omitted).

With respect to the relief requested in subparagraphs (c), (d) and (e) of the counterclaim, the court will dismiss them since there is no doubt that they will be rendered moot by adjudication of the claims raised by the government in its complaint against Vantage. The issues raised in these subparagraphs merely address the issues raised by the government in its complaint .Further, as the government states, (Doc. 13 at 19), in its brief:

> the claim for declaratory relief serves no useful purpose which will not already be served by the other claims, specifically, the claims

for breach of contract and promissory estoppel. In this case, declaring the rights of the parties would be exactly the same as determining whether there was a breach of contract or whether promissory estoppel applies. As such, a declaratory judgment would be entirely duplicative.

Additionally, with respect to the relief requested by Vantage in subparagraphs (a) and (b) of the counterclaim, the court has found that the alleged renewal term was not a binding agreement authorized by the government. As discussed, the court will dismiss Vantage's counterclaim for breach of contract and these subparagraphs are redundant of that claim. Thus, Vantage is not entitled to any relief based on the renewal term and the court, in its discretion, will dismiss Vantage's counterclaim for declaratory judgment.

## V. CONCLUSION

Based on the foregoing reasons, the court will **GRANT** the government's motion to dismiss Vantage's counterclaims, (Doc. 12), **WITH PREJUDICE**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: January 5, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0348-01.wpd